IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ADONNIS CONNER,

                Plaintiff,

v.

RANDALL BOUZEK and CHERYL JEANPIERRE,

                Defendants.

OPINION and ORDER

18-cv-1031-jdp

---

Pro se plaintiff Adonnis Conner, appearing pro se, is a prisoner at Waupun Correctional Institution. Conner slipped and fell on a slick hallway floor and injured his back. He contends that defendant Randall Bouzek negligently failed to warn him of the slippery floor and that defendant Dr. Cheryl Jeanpierre then failed to provide him with proper treatment for the pain he suffered after his fall. He brings a Wisconsin-law negligence claim against Bouzek for failing to warn him about the slippery floor and an Eighth Amendment claim against Jeanpierre about his medical care.

Bouzek and Jeanpierre have each filed motions for summary judgment, and Conner has filed his own motion for summary judgment regarding the negligence claim against Bouzek. I conclude that Conner fails to show that Jeanpierre consciously disregarded his back pain, so I will grant Jeanpierre's motion for summary judgment. I will relinquish supplemental jurisdiction over Conner's state-law negligence claim and I will dismiss this case.

PRELIMINARY MATTERS

I begin with several preliminary issues.

After the dispositive motions deadline had passed, Conner responded to defendant Jeanpierre's motion for summary judgment by asking for summary judgment in his favor on his claim against Jeanpierre and submitting a document he calls "proposed findings of fact in support of his motion for summary judgment," Dkt. 135, that largely responds to Jeanpierre's proposed findings, although his numbered proposed findings do not completely match up with Jeanpierre's. Conner also filed two documents labeled as briefs, although the first, Dkt. 134, is really a notice of Conner's own motion for summary judgment, and the second, substantive brief, Dkt. 137, was filed six days after his deadline. Jeanpierre also objects to many of Conner's proposed findings as unsupported by citations to evidence in the record.

Conner's proposed findings do not fully comply with this court's summary judgment procedures, but I will give Conner some leeway because he is proceeding pro se; I will consider his proposed findings so long as they are supported by statements in his declaration or by his medical records. I'll consider his substantive brief because it is only marginally late. Conner's formal motion for summary judgment in his favor regarding his claim against Jeanpierre was filed well after the dispositive motions deadline, so I will deny it. That doesn't stop the court from considering whether the proposed findings show that summary judgment should be entered in a non-moving party's favor. But as I explain more below, I will instead grant summary judgment to Jeanpierre.

Conner has also filed a motion for extension of time to respond to defendant Jeanpierre's reply in support of her motion for summary judgment. Dkt. 140. I construe this as Conner asking for a chance to file a sur-reply to Jeanpierre's summary judgment motion. But

sur-replies are generally disfavored by the court, and Conner doesn't adequately explain any reason to allow one here. I will deny his motion.

Both defendants have filed motions to strike Conner's expert-witness disclosures as filed about a month after his deadline. Dkt. 104, and Dkt. 106. I might overlook the tardiness of Conner's submission given the COVID-19-related hurdles that Conner says prison staff placed on law library access and communications with his jailhouse lawyer. *See* Dkt. 108. In any event, I'll deny defendants' motions as moot because Conner does not include testimony from his proposed experts—doctors who treated him at Waupun Memorial Hospital after his injury—in his summary judgment materials, and this order will result in the case being dismissed before trial.

But Conner's disclosures raise another issue. Conner doesn't present a summary of the facts or opinions that his proposed experts would present; it does not appear that Conner has even contacted them. Conner states that he wants the court to recruit counsel for him to help with obtaining this expert testimony. I've denied Conner's previous requests for recruitment of counsel in part because he failed to show that the legal and factual difficulty of this case exceeds his ability to prosecute it. *See* Dkt. 42; Dkt. 65; Dkt. 90.

Conner's current filing doesn't persuade me to reconsider that conclusion. The parties have already presented Conner's hospital records showing how the proposed expert physicians diagnosed and treated Conner. I take Conner to be saying that the hospital physicians' testimony could be used to support his argument that Jeanpierre violated the Eighth Amendment by failing to order the exact medications and dosages recommended by the hospital physicians upon discharge. But Conner can only speculate that the hospital physicians would provide testimony helpful to him. Conner could have contacted these doctors but did

3

not. And the fact that Jeanpierre disagreed with their orders doesn't mean that Jeanpierre violated the Eighth Amendment. I won't recruit counsel for Conner based on his mere hunch that these outside doctors could help him, particularly given the rest of the evidence I will discuss below showing that no reasonable jury could look at the various treatments that Jeanpierre provided for Conner's pain and conclude that she consciously disregarded the problem. I will deny Conner's renewed motion for the court's assistance in recruiting counsel.

## UNDISPUTED FACTS

The following facts are undisputed except where noted.

At all times relevant to this case, Conner was incarcerated at Waupun Correctional Institution (WCI). Defendants both worked at WCI; Randall Bouzek was a correctional sergeant and Cheryl Jeanpierre was a physician.

On August 27, 2018, Conner slipped and fell in the hallway, injuring his back. The floor was slick because it was being mopped and because of the humidity that day, which made the floor "sweat." The parties dispute whether Bouzek ensured that there were "wet floor" signs in the hallway at the time of Conner's fall.

Later that day, Conner came to the Health Services Unit, stating that he had been injured and that he was experiencing head, neck, and back pain. A nurse placed Conner in a cervical collar, and defendant Dr. Jeanpierre ordered that Conner be taken offsite to Waupun Memorial Hospital for a CT scan of his head, neck, and spine.

The CT scan of Conner's spine revealed "mild 10% superior endplate T11 and T12 vertebral body compression fractures of indeterminate age." The CT scan was negative for an acute injury resulting from his fall that day. His diagnosis was "Back and neck sprain. Back

contusion. Old Thoracic Vertebral compression fractures." Dkt. 122-2, at 52. The hospital record shows that by the evening, Conner's condition was "improving." *Id.* He reported feeling "much better" and he declined pain medications before being discharged. *Id.* As part of his discharge plan, a doctor at the hospital ordered prescriptions for ten days' worth of ibuprofen 600 mg to be taken four times a day and a week's worth of Robaxin (a muscle relaxer) to be taken four times a day. The doctor told Conner to follow up in three to five days with providers at WCI.

According to Jeanpierre, non-defendant Nurse Robert Ahlborg issued Conner a 72-hour supply of ibuprofen at a weaker dosage than directed by the hospital: 400 mg to be taken four times a day. Conner was not ordered Robaxin. The entry on Conner's medical records shows that Ahlborg entered the order for ibuprofen but that Jeanpierre was the "ordering physician" for that order. Dkt. 122-1, at 149. Jeanpierre also says that "[o]ne of my responsibilities as a provider at WCI is to review the recommendations of offsite providers and determine whether to follow those recommendations." Dkt. 121, at 3. So I will infer that Jeanpierre was at least in part responsible for this initial treatment decision. Another nurse ordered Conner ice therapy, with Jeanpierre again listed as the ordering physician.

On August 31, 2018, Conner submitted a health service request stating that his back ached and that he needed muscle relaxers and stronger painkillers. In response to the request, Conner was scheduled to be seen by nursing staff in the Health Services Unit. On September 6, 2018, Conner reported to sick call seeking a muscle relaxer, medical ice, higher dose ibuprofen, and physical therapy. Nurse Ahlborg responded that offsite recommendations for medications are reviewed by DOC providers who then determine what should be ordered at WCI. Several days later, Conner submitted another health service request stating that he

hadn't received the medications prescribed at the hospital and that he continued to suffer pain. Defendant Jeanpierre responded by stating that she would order more ibuprofen at the lower dose, 400 mg, three times a day. The medical record shows that Jeanpierre ultimately entered her order for 400 mg four times a day. Dkt. 122-1, at 149.

Conner continued to complain of pain and request a muscle relaxer. On October 3, 2018, Jeanpierre saw Conner in person. Conner told Dr. Jeanpierre that he was using the prescribed ibuprofen but was still having pain. Jeanpierre says that Conner stated that his pain was mild compared to the time of his fall; Conner attempts to dispute this but he does not cite a declaration or any other evidence supporting his account of what he told Jeanpierre. Jeanpierre also noted that the hospital CT scan showed no acute injury.

Conner says that Jeanpierre's version is false because she intentionally or inadvertently inserted information from her treatment of another prisoner: Jeanpierre's proposed finding states that she "examined Grice and noted a normal gait, no tenderness or effusions and no swelling or muscle spasming in the thoracic spine." Dkt. 139, at 11, ¶ 29. But the only reasonable inference is that the reference to Grice is a typo—Conner's underlying medical records support Jeanpierre's account of her examination of Conner. Dkt. 122-1, at 24–25. Jeanpierre ordered a topical muscle rub cream and gave him back exercises to perform on his own. She also referred Conner to physical therapy, and he was placed on the wait list.

In October and November 2018, Conner continued to complain of back pain and ask for other medication. On October 18, Jeanpierre responded that she could order duloxetine (an antidepressant medication that can be used to treat pain), but she did not do so until November 27.

In late October, Conner was seen by a nurse. He told her that he had not been performing his back exercises; she told him if he didn't perform the exercises he would not reap the benefits. The nurse told him to alternate warm and cold compresses on his back. In early November, a nurse scheduled Conner to be seen by Jeanpierre again after he stated that exercising exacerbated his pain.

On November 27, Conner saw defendant Jeanpierre and he reported continuing pain. Jeanpierre noted that he was not in acute distress. Conner disputes this assessment but he does not cite a declaration or any other evidence supporting his account of the appointment. Jeanpierre ordered Conner be assigned to a low bunk and to start ice therapy using an ice bag four times a day. She also ordered a trial of duloxetine. Conner told Jeanpierre that prior to his incarceration he had been on gabapentin, another medication used to treat nerve pain, after a motor vehicle accident. I take Conner to be saying that he found gabapentin to effectively treat his pain. Jeanpierre did not prescribe gabapentin to Conner at this appointment; she says that gabapentin is frequently diverted and abused in prison environments.

In early December Conner submitted a health service request complaining of side effects from the duloxetine. A nurse instructed Conner to stop taking the medication and the nurse relayed Conner's message to defendant Jeanpierre, who immediately ordered Conner a prescription of nortriptyline, another pain-relieving nerve medication. Two weeks later, Jeanpierre responded to Conner's continuing complaints of pain by doubling his dose of nortriptyline. Conner submitted requests stating that he was still in pain and that the nortriptyline was causing him side effects. On February 5, 2019, Jeanpierre prescribed Conner gabapentin 300 mg three times daily. Conner started physical therapy on February 15. On

March 26, Jeanpierre ordered Conner a transcutaneous electrical nerve stimulator (TENS) unit to be used daily for six months.

ANALYSIS

Conner brings a Wisconsin-law negligence claim against defendant Bouzek for failing to warn him of the slippery floor and an Eighth Amendment claim against defendant Jeanpierre for failing to provide him with effective medication for the pain he suffered after his fall. I'll start with Conner's federal claim, his Eighth Amendment claim against defendant Jeanpierre.

**A. Eighth Amendment claim**

The Eighth Amendment prohibits prison officials from acting with conscious disregard toward prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). A defendant "consciously disregards" an inmate's need when the defendant knows of and disregards "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence,

8

and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

I granted Conner leave to proceed on an Eighth Amendment claim against defendant Dr. Jeanpierre for failing to give him "'any nerve and pain relieving medication or medical treatment'" for his back pain for three months. Dkt. 12, at 3. I stated that it wasn't clear from Conner's allegations "whether he is saying that Jeanpierre gave him the incorrect medication, ineffective medication, or no medication at all," but that any of those scenarios would be sufficient to state an Eighth Amendment claim. *Id.* at 3–4. From Conner's summary judgment materials, I take him to be arguing that Jeanpierre violated his Eighth Amendment rights by failing to provide him with the exact medication ordered by the hospital physician and then failing to provide him with effective pain medication over the next few months.

A prison medical provider can violate the Eighth Amendment despite providing some care if the provider "persists in a course of treatment known to be ineffective" or a provider's decision is "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Petties v. Carter*, 836 F.3d 722, 729–30 (7th Cir. 2016). But in considering these issues I must consider the totality of care that Conner received, not just pick apart individual decisions. *Id.* at 728.

Given the totality of care that Jeanpierre provided Conner, no reasonable jury could conclude that she acted with conscious disregard to Conner's pain. The Eighth Amendment does not give prisoners the right to demand specific treatment nor does it guarantee successful treatment. And Jeanpierre did not violate the Eighth Amendment by diverging from the hospital physician's orders of a muscle relaxer and a stronger version of ibuprofen. *See Pyles v.*

*Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation.") (citing *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)). The question is whether Jeanpierre consciously disregarded Conner's pain, not whether Jeanpierre agreed with the hospital decisions or whether her medical decisions were correct.

The medical record shows that Jeanpierre attempted multiple reasonable ways to treat his pain. She approved nurses' provision of ibuprofen 400 mg and ice upon Conner's return to the prison and she renewed that prescription numerous times. When she saw Conner about five weeks after the injury, Jeanpierre says that Conner told her that his pain was reduced. Conner attempts to dispute Jeanpierre's statement but he fails to support his version with admissible evidence. Even if I credited Conner's statement about his pain level, Jeanpierre noted that his gait wasn't affected and there weren't other obvious symptoms supporting his reported severe pain. Yet she continued to try other treatment methods: she ordered a topical muscle rub cream, gave him back exercises, and referred him to physical therapy.

About two months later, Jeanpierre prescribed Conner duloxetine, assigned him a low bunk and again prescribed ice therapy. About a week later Jeanpierre changed the duloxetine to nortriptyline, and then doubled that dosage two weeks later. Two months later she prescribed him gabapentin, and about a month after that she prescribed him a TENS unit.

Conner contends that Jeanpierre should have prescribed him gabapentin sooner because he had told her that it had previously been effective to treat his pain following an auto accident. Jeanpierre says that she was reluctant to prescribe gabapentin because of its history of abuse in prison settings. There's nothing in the record that raises a reasonable inference that the decision

to hold off on gabapentin was the result of Jeanpierre disregarding Conner's pain instead of a reasoned medical decision. With regard to the months-long history of treatment at issue here, the fact that Jeanpierre was unable to completely alleviate Conner's pain might be a question of medical malpractice, or it might reflect the unfortunate reality that not all chronic pain can be eliminated. But it is not enough to show that Jeanpierre consciously disregarded his pain. So I will grant summary judgment to Jeanpierre on Conner's Eighth Amendment claim.

**B. Negligence claim**

That leaves Conner's state-law negligence claim against defendant Bouzek for failing to ensure that wet-floor signs were out at the time of Conner's fall. But a federal court generally does not have jurisdiction over a state-law claim unless it is related to a federal claim that is pending in the same case, 28 U.S.C. § 1367, or the plaintiff and defendants are citizens of different states and the amount in controversy is greater than $75,000, 28 U.S.C. § 1332. In this case, I am granting summary judgment on Conner's only remaining federal claim, so I decline to exercise jurisdiction over his state-law negligence claim under § 1367. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). Conner does not allege that he and defendants are citizens of different states and nothing in the complaint suggests that they are, so I cannot exercise jurisdiction under § 1332 either. Accordingly, I will dismiss Conner's state-law claim without prejudice. I'll deny the parties' cross-motions on this claim. Conner may refile his negligence claim in state court, subject to the applicable Wisconsin statutes of limitations. If he chooses, he may also pursue a Wisconsin medical malpractice claim against Jeanpierre, subject to Wisconsin procedural rules.

ORDER

IT IS ORDERED that:

1. Plaintiff Adonnis Conner's motion for summary judgment on his claim against defendant Cheryl Jeanpierre, Dkt. 134, is DENIED.

2. Plaintiff's motion to file a sur-reply to defendant Jeanpierre's motion for summary judgment, Dkt. 140, is DENIED.

3. Defendants' motions to strike plaintiff's expert-witness disclosures, Dkt. 104 and Dkt. 106, are DENIED as moot.

4. Plaintiff's renewed motion for assistance in recruiting counsel, Dkt. 101, is DENIED.

5. Defendant Cheryl Jeanpierre's motion for summary judgment, Dkt. 118, is GRANTED.

6. Plaintiff's Wisconsin-law negligence claim against defendant Randall Bouzek is DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3). The parties' summary judgment motions on this claim, Dkt. 92 and Dkt. 109, are DENIED.

7. The clerk of court is directed to enter judgment accordingly and close this case.

Entered April 22, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge